## IN THE UNITED STATES DISTRICT COURT
## TEXAS WESTERN DISTRICT
## AUSTIN DIVISION

FILED

2018 JUL 20  PM 12: 08

| | | |
|---|---|---|
| **DENNIS RYLAN RIZER**<br>**Claimant** | § § § | CASE **A18CV0607LY** |
| **v.** | § § | **COMPLAINT FOR DAMAGES** |
| | § | **FOR** |
| **COUNTY OF BASTROP, TEXAS** | § | |
| **BASTROP INDEPENDENT** | § | **1. VIOLATIONS OF THE** |
| **SCHOOL DISTRICT,** | § | **RACKETEER INFLUENCED** |
| **335th JUDICIAL DISTRICT,** | § | **AND CORRUPT** |
| **JUDGE REVA TOWSLEE-** | § | **ORGANIZATIONS ACT** |
| **CORBETT, BASTROP COUNTY** | § | **["RICO"] (18 U.S.C. §1961 et.seq.)** |
| **SHERIFF'S DEPARTMENT,** | § | **2. AIDING AND ABETTING** |
| **TERRY PICKERING,** | § | **PRIMARY CONTRAVENTION** |
| **BASTROP CENTRAL APPRAISAL** | § | **OF RICO SECTION 1962(c)** |
| **DISTRICT, BASTROP COUNTY** | § | **3. AIDING AND ABETTING** |
| **TAX ASSESSOR/COLLECTOR,** | § | **RICO SECTION 1962(d)** |
| **JIM WITHER, RICHARD PETREE,** | § | **CONSPIRACY** |
| **LINDA HARMON, BARRY** | § | **4. VIOLATIONS OF THE** |
| **EDWARDS,** | § | **CIVIL RIGHTS ACT (42 U.S.C.** |
| **Defendants.** | § | **§1983 et seq)** |
| | § | **5. TEXAS THEFT LIABILITY** |
| | § | **ACT (Texas Civil Code §134.002-** |
| | § | **03)** |
| | § | **6. FRAUD** |
| | § | **7. CONVERSION** |
| | § | **8. INTENTIONAL INFLICTION** |
| | § | **OF EMOTIONAL DISTRESS** |
| | § | |
| | § | **DEMAND FOR JURY TRIAL** |

## COMPLAINT

Dennis Rylan Rizer, (hereinafter "Claimant"), files his civil RICO claim and notices any and all parties, including but not limited to named defendants, of his RICO claim against them.

1

## NATURE OF CLAIM

1.     This is a civil RICO claim brought by Dennis Rylan Rizer, (hereinafter "Claimant").

2.     Claimant claims that Defendants, (hereinafter "the enterprise") operated a criminal enterprise under color of law.

3.     For purposes of this claim, Claimant asserts that all the Individual Defendants operated as a continuing unit that functions with a common purpose as it relates to Claimant.

4.     The enterprise had a purpose, that being the taking of Claimant's property in order to enrich themselves or the enterprise.

5.     The enterprise had relationships among those associated with the enterprise.

6.     Each depended on the other in order to effectuate the scheme.

7.     The enterprise had longevity sufficient to permit those associates to pursue the enterprise's purpose.

8.     The enterprise caused Claimant to incur irreparable harm.

9.     The enterprise engaged in the taking and conversion of Claimant's property as enumerated in 18 U.S.C. § 1961.

10.    The enterprise committed fraud.

11.    The enterprise committed mail fraud.

12.    The enterprise counterfeited securities.

13.    The enterprise committed conversion.

14     The enterprise committed trespass.

15.    The enterprise caused Claimant to become homeless.

16.    The enterprise has caused and continues to cause Claimant harm.

17.    This claim is properly brought pursuant to the Racketeer Influenced and Corrupt Organizations Act. (RICO).

## PARTIES, JURISDICTION AND VENUE

18.    Claimant is a man who lives in Texas and is endowed with unalienable Rights.

19.    At the time of the RICO action Claimant's home and domicile was in Bastrop County, Texas.

20.    COUNTY OF BASTROP, TEXAS is a person in Bastrop County, Texas

21.    BASTROP COUNTY SHERIFFS DEPARTMENT is a person in Bastrop County, Texas.

22.    335th JUDICIAL DISTRICT COURT is a person in Bastrop County, Texas.

23.    BASTROP CENTRAL APPRAISAL DISTRICT is a person in Bastrop County, Texas.

24.    BASTROP COUNTY TAX/ASSESSOR is a person in Bastrop County, Texas.

25.    BASTROP INDEPENDENT SCHOOL DISTRICT is a person in Bastrop County, Texas.

26.    JIM WITHERS, who is being sued in his individual capacity, was/is an individual residing and/or employed in the position of Bastrop County Judge in Bastrop County, Texas.

27.    JUDGE REVA TOWSLEE CORBETT, who is being sued in her individual capacity, was/is a district judge in the 335th Judicial District who presided in a tax court in Bastrop County, Texas which concerned the property.

28.    TERRY PICKERING, who is being sued in his individual capacity, was/is an individual residing in Bastrop County and an elected sheriff of the BASTROP COUNTY SHERIFF'S OFFICE in Bastrop County, Texas.

29.    RICHARD PETREE, who is being sued in his individual capacity, was/is an individual who was an officer or employee of the Bastrop Central Appraisal District in Bastrop County, Texas.

30.    LINDA HARMON, who is being sued in her individual capacity was/is a person believed to reside in Bastrop County, and an officer in the Bastrop County Tax Assessor/Collector's office in Bastrop County, Texas.

31.    BARRY EDWARDS, who is being sued in his individual capacity, was/is an individual believed to reside in Bastrop County, and an officer/superintendent of the Bastrop ISD, Bastrop County, Texas.

32.    This is a civil action seeking damages for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et seq ("RICO"), §1964(c), RICO's civil damages provision, 42 U.S.C. §1983 et seq. ("Civil Rights Act"), and State of Texas statutory causes of action for violations of the Texas Theft Liability Act (Texas Civil Practice & Remedies Code §134.002-03), Texas Civil Practice & Remedies Code Chapter 110, and common law causes of action for fraud, conversion, and intentional infliction of emotional distress.

33.    This Court has original subject matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(a), and 18 U.S.C. §1965, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a).3.

34.    This Court has personal jurisdiction over the Defendants, all of whom, on information and belief, reside and/or do business in the State of Texas, within the Western District.

35.    Additionally, the Court has supplemental jurisdiction of the remaining Counts as they arise from the same nucleus of facts.

36.     Jurisdiction in conveyed on this Court as a federal question pursuant to 18 U.S.C. §1331, 18 U.S.C. §1964(c), RICO's civil damages provision, 42 U.S.C. §21B, and Texas Civil Practice & Remedies Code Chapter 110 and §134.02-03.

37.     Additionally, the Court has supplemental jurisdiction of the remaining Counts as they arise from the same nucleus of facts.

38.     Jurisdiction is further conveyed on this Court pursuant to Pub. L. No. 103-141, 107 Stat. 1488 and Pub. L. No. 106-274, 114 Stat. 803.

39.     This Court has personal jurisdiction over all Defendants as their actions occurred in this judicial district.

40.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(3), in that, on information and belief, all individual Defendants reside in and do business in Bastrop County, Texas, which is within the Western District,  and RICO's venue provision 18 U.S.C. §1965(a) and (b).

41.     Additionally, the principal events complained of have and will continue to occur in this District.

## THE PROPERTY

42.     The property is described as Lot 30, ESCONDIDO ESTATES ADDITION in Bastrop County, Texas, according to the map or plat thereof recorded in Plat Cabinet 1, Page 66A, Plat Records of Bastrop County, Texas.

43.     With an address of 213 Escondido Drive, Del Valle, Texas 78617.

## NATURE OF THE ACTION

44.     This is an action for damages arising from the Defendant's operation of a criminal enterprise that, through the use of forged instruments, falsifies property from non-commercial, non-taxable to taxable commercial property, commits mail fraud by sending false and misleading statements through the mails, offers distorted facts and perjured court testimony, issues counterfeit

securities and engages in unlawful taking of non-commercial, non-taxable property.

45.    The Defendants have engaged in a longstanding pattern of criminal conduct against victims who have unalienable Rights to property, misclassifying property not belonging to banks, bankers and corporations as taxable property with purported business income, conversion of property, obtaining unlawful orders to sell non-commercial property in the absence of ownership of said property and issuing counterfeit securities for sale to the public.

46.    The Defendants have engaged in extortion and fraud by mailing falsified statements claiming a fictitious debt, and fraudulently claiming ownership of another's non-commercial property in order to justify sale of said property for financial gain.

47.    This longstanding pattern of conduct has inflicted enormous harm on Claimant.

48.    The enterprise has corrupted the sanctity of the legal process at its core by abusing their positions of power for illegal financial gain.

49.    The Racketeering Acts were not isolated, but rather were related in that they had the same or similar purposes and results, participants, victims, and methods of commissions.

50.    Further, the Racketeering Acts were continuous, occurring on a regular basis for several decades and resulting in an unlawful taking and sale of counterfeit securities.

51.    The Acts continue to the present.

## THE FACTS

52.    The Right to own property is a substantive Right.

53.    The Right to own property is an unalienable Right as enumerated in the first organic law of the United States of America, the Declaration of Independence.

54.    A substantive Right cannot be taxed.

55.    An unalienable Right cannot be liened.

56.    Claimant purchased the property from Charles R. Appleby and wife Cindy G. Appleby on August 30, 1985.

57.    The property was conveyed with a Deed of Trust with Vendor's Lien.

58.    The Applebys filed a Release of Lien on the property on December 19, 1986.

59.    A Declaration of Ownership[1] was filed in Bastrop County Clerk's records on May 25, 2005.

60.    The Declaration gave notice that the property was non-taxable private property.

61.    The Declaration further noticed that the property was a Sanctuary of His Ministry.

62.    Claimant filed another Public Notice[2] on March 19, 2010 noticing the public that the Sanctuary was Private Property and was Tax Exempt.

63.    The Declaration of Ownership sets the fee for Trespass upon the Sanctuary at $10,000.000.00 per trespass.

64.    The 15th Legislature of the State of Texas on August 21, 1876[3] defined what money and property is subject to taxation.

---

[1] Exhibit 1, Attached hereto and incorporated herein.
[2] Exhibit 2, Attached hereto and incorporated herein.
[3] Exhibit 3 Attached hereto and incorporated herein.

65.    The Texas Constitution was rewritten in 1876 and as can be seen in Article 8, the writers provided for taxation of personal property "which shall be ascertained as may be provided by law."

66.    The 15th Legislature of the State of Texas on August 21,1876 (Act) passed such a law.

67.    **"An Act defining what <u>money and property is subject to taxation</u> or exemption, and the mode of listing the same**."

68.    Section 1.  Be it enacted by the Legislature of the State of Texas, That all real and personal property in this State <u>the property of corporations</u> now existing or may be hereafter created, and <u>the property of all banks or banking companies</u> now existing or may be hereafter created, <u>and of all bankers</u>, except such as is hereinafter expressly exempted, is subject to taxation and such property, or the value thereof, shall be entered in a list of taxable property for that purpose, in a manner prescribed by this act."

69.    The ACT clearly defined what property is taxable.  This Act is what gives §11.01 of the Texas Tax Code (TTC) authority for ad valorem taxation in Texas.

70.    §11.01 of the Texas Tax Code (TTC) Real and Tangible Personal Property:

(a) All real and personal property that this state has jurisdiction to tax is taxable unless <u>exempt by law</u>.

(b) This state has jurisdiction to tax real property if located in this state.

(c) This state has jurisdiction to tax tangible personal property if the property is

(1) located in this state for longer than a temporary period;

(2) temporarily located outside the state and the owner resides in this state; or

(3) used continually whether regularly in or irregularly in this state.

8

(d) Tangible personal property that is operated or located exclusively outside this state during the year preceding the tax year and on January 1 of the tax year is not taxable in this state.

71.   As can be seen §11.01 TCC does not clearly identify what "money and property is subject to taxation" as this was defined by the Legislature in 1876.

72.   §11.01 also exempts property that is not within the jurisdiction of taxation.

73.   Claimant's property is not income producing property of a corporation or property of a bank or banking company.

74.   Therefore, Claimant's property is not within the taxing authority of the TTC.

75.   TTC  §101.002. CONSTRUCTION OF CODE. (a) The Code Construction Act (Chapter 311. Government Code) applies to the construction of each provision of this title, except as specifically provided by this title.  (b) Except as otherwise provided by statute, the authority and jurisdiction of the state to determine the subjects and objects of taxation shall extend to the limits of the then current interpretations of the Texas Constitution and Constitution of the United States of America (1789) and laws.

76.   Texas Government Code (TGC) §312.005. LEGISLATIVE INTENT.   In interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy.

77.   "Legislative facts are those which help the tribunal to determine the content of law and policy and to exercise its judgment or discretion in determining what course of action to take. *Emerson v. State* 880 S.W. 2d 759, 764, (Tex.Crim.App. 1994).

78.   "A fundamental rule controlling the construction of a statute is to determine, if possible, the intent of the legislature as expressed in the language of that Statute. However, legislative intent is the law itself, and must be enforced if determined although it may not be consistent with the strict letter of the statute." *State v. Dyer,*

9

145 Tex. 586, 200 S.W.2d 813 (1947); *Crimmins v. Lowry*, 691 S.W.2d 582 (Tex. 1985).

79.   Therefore a trial Judge when presented with Legislative evidence should determine the content of law and policy and to exercise its judgment" for the Legislative Act of the 15th Legislature.

80.   Can TTC § 33.47 apply to Claimant's property to establish a prima facie case that it is taxable?

> TTC §33.47. Tax Records as Evidence. (a) In a suit to collect a delinquent tax, the taxing unit's current tax roll and delinquent tax roll or certified copies of the entries showing the property and the amount of the tax and penalties imposed and interest accrued constitute prima facie evidence that each person charged with  a duty relating to the imposition of the tax has complied with all requirements of law and that the amount of tax alleged to be delinquent against the property and the amount of penalties and interest due on that tax as listed are the correct amounts.
>
> (b) If the description of a property in the tax roll or delinquent tax roll is insufficient to identify the property, the records of the appraisal office are admissible to identify the property.
>
> (c) In a suit to collect a tax, a tax receipt issued under Section 31.075 of this code, or an electronic replica of the receipt that states that a tax has been paid is prima facie evidence that the tax has been paid as stated by the receipt or electronic replica.

81.   Claimant is not a person as defined in section 4 of the Legislative Act of 1876.

82.   The term person whenever used in this act or any other act regulating the assessment or collection of taxes  shall be construed to include **firm, company or corporation.**"

83.   *Ejusdem generis* means "of the same kind, class, or nature." Black's Law Dictionary (6th Edition).   The doctrine states that when interpreting general words that follow an enumeration of particular or specific things, the meaning of those general words should be confined to things of the same kind. *Lefevers v.*

*State*, 20 S.W.3d 707, 711 (Tex. Crim. App. 2000); *Perez v. State,* 11 S.W.3d 218, 221 (Tex. Crim. App. 2000); *Thomas v. State*, 65 SW. 3d 38 (Tex.Crim.App. 2001).

84.    This definition coincides with Section 1 of the Act which establishes what property is taxable: "the property of corporations" and "property of all banks or banking companies".

85.    In such actions, the taxing authority makes out a prima facie case by the introduction of official tax records and proof of non-payment. Texas Rev.Civ.Stat. Ann., Art. 7326(Vernon); *State v. Whittenburg*, 153 Tex. 205, 265 S.W.2d 569 (Tex. 1954); *East and Mount Houston Independent School District v. South Texas Lumber Co.*, 153 Tex. 535, 271 S.W.2d 795 (Tex. 1954).

86.    Once such proof is made, as was indisputably the case here, it is incumbent upon Taxpayer to show that the tax levied and assessed was not in accordance with law." *City of Orange v. Levingston Shipbuilding Co.*, 258 F.2d 240 (5th Cir. 1958)

87.    This presumption imposes upon the defendant taxpayer the burden of producing evidence sufficient to justify a fin*ding that the tax situs of the property was* **outside the tax authority's jurisdiction**. *State v. Whittenburg*, 153 Tex. 205, 209, 265 S.W.2d 569, 572 (Tex.1954).

88.    Defendants introduced prima facie evidence on a presumption that Claimant's property is within the tax authority's jurisdiction, Claimant, not being a 'person" as described and defined in the Act is not "charged with a duty relating to the imposition of the tax" therefore Claimant's property is outside the taxing authority's jurisdiction and is not liable for an ad valorem tax imposed by TTC.

89.    There is no evidence in the record that establishes that Claimant's property is income producing or the property of a bank, banking company or corporation.

90.     There is no proof of contract, commercial ownership by BASTROP COUNTY, or commercial assessment in the file in Cause No. 9645, COUNTY OF BASTROP v. D. RIZER et al.

91.     The enterprise sold a property it did not own in violation of the Declaration of Independence, the Eighth Amendment to the Bill of Rights and the Texas Theft Liability Act.

## THE INDIVIDUAL DEFENDANTS WERE ALL NECESSARY ACTORS IN ORDER FOR THE ENTERPRISE TO FUNCTION

92.     Each Defendant had to aid and abet the actions of the others, or conspire with the other defendants in order for the enterprise to function.

93.     BASTROP COUNTY CENTRAL APPRAISAL DISTRICT, in the absence of a rendering statement, listed Claimant's non-commercial property on the property tax rolls.

94.     RICHARD PETREE, the acting chief appraiser, rendered Claimant's non-commercial property for taxation.

95.     BASTROP COUNTY TAX ASSESSOR COLLECTOR in the person of Linda Harmon, created a tax record as prima facie evidence of a tax liability.

96.     BASTROP INDEPENDENT SCHOOL DISTRICT rendered or caused to be rendered Claimant's non-commercial property for taxation.

97.     BASTROP ISD Supervisor BARRY EDWARDS knew or should have known my non-commercial property was listed on the property tax rolls.

98.     BASTROP COUNTY TAX/ASSESSOR COLLECTOR mailed tax statements addressed to Claimant.

99.     BASTROP COUNTY TAX/ASSESSOR COLLECTOR LINDA HARMON knew or should have known that Claimant never rendered his non-commercial property for taxation.

100.   BASTROP COUNTY TAX/ASSESSOR COLLECTOR LINDA HARMON knew or should have known no tax assessments were made against Claimant's property.

101..  COUNTY OF BASTROP, TEXAS and BASTROP INDEPENDENT SCHOOL DISTRICT sued Claimant for delinquent property taxes in the amount of $41,811.78.

102..  The market value of the property on the date of judgment was valued as $158,315.00.

103..  The 335th JUDICIAL DISTRICT, Judge REBA TOWSLEE-CORBETT presiding, in addition to signing a monetary judgment, ordered the entire property to be sold for payment of the judgment.

104..  The BASTROP COUNTY SHERIFF, TERRY PICKERING acting as agent of the office, then offered the property for sale at a tax sale auction.

105..  The property did not sell at auction.

106.   Terry Pickering, on May 8, 2012, created and signed a fraudulent security entitled "Sheriff's Deed".

107..  The seized property later sold "over counter".

108..  On June 12, 2012, Jim Wither, County Judge of Bastrop County, reconveyed my property to Arben Shaholli for $50,000.00 consideration by uttering a forged instrument.

109.   JIM WITHER, acting as County Judge, signed the TAX RESALE DEED on June 12, 2012.

110..  It took the concerted effort of all actors to falsify records, sue, adjudicate, seize and sell my property.

111..  The COUNTY OF BASTROP had/has no authority to tax my property.

112.   The COUNTY OF BASTROP had/has no authority to lien my property.

113.   In order to tax my property, the enterprise had to falsify tax records in order to convert my non-commercial property to appear as a taxable situs.

114.   There is no evidence that my property was the property of a bank, banker or corporation.

115.   There is no evidence that my property earned business income.

116.   The enterprise separated me from my property.

117.   The enterprise engaged in an unlawful taking.

### THE PREDICATE ACTS

118.   Richard Petree, acting in his personal capacity as Chief Property Tax Appraiser, in the absence of a rendering statement, and absent evidence of a taxable situs, placed my non-commerical property on the tax rolls.

119.   Richard Petree mailed Notices of annual Appraisal values applied to Claimant's non-commercial property.

120.   Barry Edwards and Jim Withers, acting in their personal capacities as taxing units, agreed that my property was a taxable situs and caused my property to be placed on the tax rolls.

121.   Linda Harmon, acting in her capacity as Bastrop County Tax Assessor/Collector, created a record of assessed taxes and delinquent taxes in the absence of evidence of a taxable situs.

122.   Linda Harmon mailed tax statements asserting ad valorem taxes due against my non-commercial property.

123.   The taxing statements were fraudulent securities.

124.   Linda Harmon extorted payment through the U.S. Postal Service for the fraudulent securities using the coercion and threat that if Claimant did not pay, she would take Claimant's property.

125.   Linda Harmon caused, by electronic transmission, Claimant's property to be named in a Petition for collection of property taxes.

126.   Judge Reba Towslee Corbett, acting in her personal capacity as the judge of the 335th Judicial District issued an order for monetary judgment and the sale of Claimant's property for delinquent property taxes.

127.   Sheriff Terry Pickering, acting in his personal capacity, auctioned off Claimant's private non-commercial property at a "tax" sale on May 1, 2012.

128.   Sheriff Terry Pickering then issued a Sheriff's Deed for property to which he held no claim, deed or title.

129.   Jim Withers, acting in his personal capacity signed a Tax Resale Deed, a fraudulent security appearing to convey interest in Claimant's property to Arben Shaholli.

130.   Each actor played their part in the taking of Claimant's property.

131.   Each actor acted without authority and outside the jurisdiction of the Law.

132.   Without each actor completing their own predicate act, the enterprise could not have achieved the desired result:   the unlawful taking of private non-commercial property for personal gain.

132.   The enterprise engaged in a pattern of the predicate acts 1 through 132, every year from 1985 to 2011 until the desired result was consummated.

133.   The enterprise continues to engage in the same predicate acts against Claimant's property.

### COUNT 1: VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)(AGAINST THE INDIVIDUAL DEFENDANTS FOR CONSPIRACY TO COMMIT A PATTERN OF FRAUDS IN VIOLATION OF RICO

134.   The preceding paragraphs are incorporated herein as though fully set forth below.

135.   The enterprise agreed to engage in a series of events that stripped Claimant of his property and possessions.

136.  The enterprise, for a number of years, listed, appraised,  calculated and collected an ad valorem tax against Claimant's non-taxable property.

137.  Claimant repeatedly, by public notice, warned future trespassers of the consequences of committing trespass.

138.  Claimant's notices were ignored.

139.  Claimant gave public notice that his property was not subject to taxation.

140.  Claimant gave public notice that his property was used as a religious Sanctuary.

141.  The enterprise paid no heed to Claimant's public notices.

142.  The enterprise paid no heed to the property tax laws enacted by the 15th Texas Legislature with the passing of the Texas Tax Code Act in 1876.

143.  The actions of the enterprise resulted in the unlawful taking of Claimant's property on July 9, 2012.

144.  On July 9, 2012, an order for eviction was signed.

145.  The acts of the enterprise were a violation of 18 U.S.C. §1962(d).

146.  Therefore, Claimant asserts claims against each individual Defendant in the enterprise for RICO conspiracies.

## FRAUD

147.  The enterprise caused Claimant's property to be listed as a taxable situs on the Bastrop County property tax rolls when it knew or should have known the property was not owned by a bank, banker or corporation.

148.  The enterprise presented documents through the U.S. Postal service claiming the taxable appraisal value of Claimant's property.

149.  The enterprise presented documents through the U.S Postal service claiming Claimant owed a debt or obligation on his property.

150.  The documents were counterfeit securities.

151.   The enterprise knew or should have known no commercial business was conducted on Claimant's property.

152.   The enterprise knew or should have known the property was not owned by a bank, banker or corporation.

153.   When Claimant did not submit to payment of the inducement, the enterprise engaged in an unlawful taking.

154.   After the taking, the enterprise uttered a fraudulent security for personal gain.

## TRESPASS

155.   In 2005, Claimant noticed the public of ownership of Lot #30, Escondido Estates, Bastrop County, Texas.

156.   Claimant's notice claimed possession, the Right of possession and the Right of property.

157.   Despite the public notice, the enterprise made unauthorized entries on Claimant's land.

158.   The enterprise did not have Claimant's consent nor authorization to enter upon his property.

159.   The enterprise committed trespass on Claimant's property.

## UNLAWFUL TAKING

160.   The enterprise did not own nor have an interest in Claimant's property.

161.   The enterprise did not own any portion of Claimant's property.

162.   The enterprise held no title to Claimant's property.

163    The enterprise knew Claimant's property was not a taxable situs.

164.   The enterprise did not conduct an eminent domain proceeding.

165.   The enterprise had no materials, labor or sweat equity in Claimant's property.

166.   When it sold Claimant's property with no evidence of ownership of the property, it engaged in an unlawful taking.

167.   There is a maxim of law which states, "One cannot sell that which it does not own."

168.   The enterprise never had ownership of Claimant's property.

169.   Reba Towslee Corbett issued an order for sale on a judgment of $41,811.78.

170   Sheriff Pickering auctioned the property on May 1, 2012 for unpaid taxes of $41,811.78.

171.   In the Judgment, Claimant's property was valued at $158,315.00.

172.   The enterprise issued a Sheriff's deed giving ownership to the tax assessor/collector

173.   Claimant owned, in fee simple, the 5.35 acres and everything on the property.

174.   The enterprise assumed dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with Claimant's Rights.

175.   Dean Rizer demanded Claimant's property from the enterprise.

176.   The enterprise refused to return the property.

## CONVERSION

177.   Dean Rizer owned Claimant's property.

178.   Dean Rizer had legal possession of Claimant's property.

179.   Dean Rizer was entitled to possession of Claimant's property.

180.   The enterprise, by uttering counterfeit documents, converted Claimant's property to its own.

181.   The enterprise did so in an unlawful and unauthorized manner to the exclusion of and inconsistent with Claimant's Rights.

## COUNTERFEIT SECURITY

182.   A counterfeit security, pursuant to 18 USC §2311 includes "evidence of indebtedness".

183.   The property appraisals BASTROP COUNTY CENTRAL APPRAISAL DISTRICT mailed to Claimant were counterfeit securities.

184.   The property tax bills from the BASTROP COUNTY TAX/ASSESSOR's office mailed to Claimant were counterfeit securities.

185.   The Resale Tax Deed issued to another was a counterfeit security.

## FIRST CLAIM FOR RELIEF
## FOR VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ["RICO"]
(18 U.S.C. §1961)
[Against all Defendants]

186.   Plaintiff incorporates by reference the allegations above as if fully set forth herein.

187.   The Defendants are all "persons" pursuant to 18 U.S.C. §1961.

188.   Collectively, the Defendants operated as an "enterprise" through which private non-commercial property is placed on the tax roles as property exercising a taxable privilege and owned by a bank, banker or corporation.

189.   The enterprise then defrauds and extorts payment for property that is not taxable.

190.   When Claimant did not pay the extortion, Defendants deprived Claimant of the Pursuit of Happiness, the Right to property, Right to Possession, and Possession by taking his property.

191.   By and through the above described acts, as set forth above, the Defendants operate a criminal enterprise in which each of the parties plays a specific role.

1)   Petree acting as BASTROP COUNTY CENTRAL APPRAISAL DISTRICT makes an appraisal of the property, thus falsifying documents to turn

non-commerical property into a commercial property owned by a bank, banker or corporation;

      2) BASTROP COUNTY, through its tax assessor/collector issues counterfeit securities enumerating a debt owed by the property owner.

      3) When the non-commercial property owner does not pay the extorted tax, BASTROP COUNTY contracts to bring suit against the property owner to either force him to pay tax and accumulated interest on fees on his non-commercial property or, if the property owner does not pay, to bring suit for the property.

      4) A special state district court, sitting in "property tax jurisdiction", issues orders to sell the entire property for payment of the alleged tax debt.

      5) The Sheriff sells the property that neither he nor the County owns and issues a counterfeit security in the form of a Sheriff's Deed.

192.  The Defendants' enterprise has a defined decision-making structure. Each Defendant works in coordination with the other Defendants. Each having his/her own particular contribution to the overall crime.

193.  The coordinated decision-making structure is long standing, spanning several decades in the instant case.

194.  The Defendants have used the mails and wires on behalf of themselves to communicate fraudulent securities in pursuit of their enterprise.

195.  The Defendants have received money and property from their enterprise in order to generate revenue.

196.  By the above described acts, the Defendants have intentionally inflicted substantial and serious injury on Claimant and his family.

## SECOND CLAIM FOR RELIEF
## FOR AIDING AND ABETTING PRIMARY CONTRAVENTION
## OF RICO SECTION 1962(C)
### (18 U.S.C. §1962)
### [Against all Defendants]

197.     For Claimant's Second Claim for Relief, he realleges and incorporates Paragraphs 1 through 196, and each and every claim for relief asserted pursuant to the Federal Racketeer Influenced and Corrupt Organizations Act of 1970 ["RICO"][Title 18 U.S.C. §§ 1961 et.seq.].

198.     Claimant alleges that the Defendants employed the federal mails and/or federal interstate wires, engaged in federal extortion, and as well as engaged in racketeering activity as alleged herein, to aid and abet the primary RICO § 1962(c) contraventions committed by the Defendants as alleged herein above.

199.     Claimant alleges that the Defendants were knowledgeable and aware of the commission of the primary RICO contraventions committed,  and that the Defendants substantially assisted in the commission of the primary RICO contraventions by the Defendants, thereby deriving a monetary benefit as a result to Claimant's detriment.

200.     Claimant is entitled to recover, pursuant to Title 18 U.S.C. §1964(c), treble damages in the amount to be determined by offer of proof at time of trial.

201. Claimant is also entitled to recover attorneys' fees and costs of this litigation, as well as damages arising from lost use of my home and compensation for being homeless which is attributable to the activities engaged in by the Defendants committed in furtherance of the Racketeer Influenced and Corrupt Organizations Act of 1970 ["RICO"][Title 18 U.S.C. §1961 et.seq.].

# THIRD CLAIM FOR RELIEF FOR
# AIDING AND ABETTING A RICO SECTION 1962(D) CONSPIRACY IN CONTRAVENTION OF RICO SECTION 1962(C)
### (18 USC §§ 2(a)-(b) and §§1962(c)-1962(d)]
### [Against all Defendants]

202.    For the Third Claim for Relief, Claimant realleges and incorporates Paragraphs 1 through 201, and each and every claim for relief asserted pursuant to the Federal Racketeer Influenced and Corrupt Organizations Act of 1970 ["RICO"][Title 18 U.S.C. §§ 1961 et.seq.].

203.    Claimant alleges that the Defendants' conduct constituted aiding and abetting a RICO §1962(d) conspiracy inasmuch as the Defendants were:

  1. associated with a criminal venture as alleged herein;
  2. that the Defendants participated in the criminal venture as something the Defendants wished to bring about; and,
  3. that the Defendants sought by their actions to make it succeed.

204.    Claimant alleges that the Defendants were knowledgeable and aware of the commission of the primary RICO contraventions committed, and that the Defendants substantially assisted in the commission of the primary RICO contraventions, thereby deriving a monetary benefit as a result to Claimant's detriment.

205.  Claimant alleges that the Defendants aided and abetted a RICO Section 1962(d) conspiracy between said Defendants to contravene RICO Section 1962(c) to injure, damage, and take my personal private property for gain.

206.  Claimant alleges that the Defendants are conspiratorially liable under application of the **Pinkerton** Doctrine [**Pinkerton, v. United States**, 328 U.S. 640 (1946) and **Salinas, v. United States**, 522 U.S. 52 (1997)] for the substantive RICO Section 1962(c) contraventions committed by defendant inasmuch as:

1. The Defendants engaged in the fraudulent activities that constitute the RICO §1961(5) pattern of racketeering activity;

2. The Defendants are members of the RICO §1962(d) conspiracy designed and intended to contravene RICO § 1962(c);

3. The Defendants engaged in activities in furtherance of advancing and promoting the RICO §1962(d) conspiracy.

## FOURTH CLAIM FOR RELIEF
## CIVIL RIGHTS ACT OF 1871 DEPRIVATION OF RIGHTS, PRIVILEGES, AND IMMUNITIES UNDER COLOR OF STATE LAW
(42 U.S.C. § 1983, 1985, & 1986)
[Against All Defendants]

207. Claimant incorporates by reference the allegations contained above as if fully set forth herein.

208. By the above described conduct, Defendants, in their official roles, have deprived Claimant of property and liberty interests acting under color of law without the procedural and substantive due process rights enumerated by the Declaration of Independence and guaranteed under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Article 1, Section 19 of the Constitution of the State of Texas.

209. All actors conspired to falsely claim a debt and then to unlawfully take Claimant's non-commercial personal property without due process or ownership interest of any kind.

210 As a direct and proximate result of Defendants' conduct in violation of 42 U.S.C. §1983, Claimant has sustained injury and damages for which he seeks redress.

211. Upon information and belief, unless permanently enjoined by this Court, Defendants will continue to injure Claimant and others, in a manner for which there is no adequate equitable remedy.

## FIFTH CLAIM FOR RELIEF
## VIOLATION OF BILL OF RIGHTS EIGHTH AMENDMENT

212.  The enterprise has acted against Claimant in violation of the Excessive Fines Clause of the Eighth Amendment.

213.  The enterprise has, by color of law, subjected Claimant to forfeiture of property.

214.  The enterprise has seized Claimant's property in an *in rem* civil forfeiture proceeding.

215.  The U. S. Supreme Court in *Austin v. United States*, (509 U.S.602, 1993) concluded that "the Eighth Amendment was intended to prevent the government from abusing its power to punish, and therefore that "the Excessive Fines Clause was intended to limit only those fines directly imposed by, and payable to, the government."

216.  The enterprise could not demand taxes, get a judgment and exact an additional "fine".

217.  In order to constitute a fine under the Eighth Amendment, the forfeiture must constitute "punishment".

218.  The theory of *in rem* forfeiture is said to be that the lawful property has committed an offense.

219.  The taking of property in a civil case is punitive and the taking of the entire property for perceived non-payment of a tax is the very definition of excessive fine and punishment.

220.  The enterprise seized Claimant's property by forfeiture.

221.  It did not matter whether the charge against Claimant was criminal or civil, the enterprise inflicted punishment on Claimant.

222.   The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense. *Sanders v. Szubin,* 828 F.Supp. 2d 542 (D.C.ED New York, 2011).

223.   To seize a man's property is one of the worst forms of punishment that can be inflicted.

224.   The enterprise cannot justify its seizure actions, they were unconscionable.

## SIXTH CLAIM FOR RELIEF
## TEXAS THEFT  LIABILITY ACT

### (TEXAS CIVIL PRACTICE & REMEDIES CODE  §134.001-005)

225.   Claimant incorporates by reference the allegations contained above as if fully set forth herein.

226.   The Defendants, by and through the conduct described above, committed theft by intentionally submitting fraudulent invoices to Claimant in order to falsify prima facie evidence of delinquent debt with knowledge that Claimant's property was not subject to taxation.

227.   At all times, Defendants threatened to take Claimant's property if he did not pay, all the while extorting and pressuring him to pay a tax he did not owe.

228.   Claimant has suffered injury and damages from each instance of fraud and attempted fraud committed by the Defendants, both individually and cumulatively, and is entitled to relief under Texas Civ.Prac.& Rem. Code § 134.005.

## SEVENTH CLAIM FOR RELIEF
## FRAUD

229.   Claimant incorporates by reference the allegations contained above as if fully set forth herein.

230. The Defendants, by and through the conduct described above, committed fraud in each instance in which they deliberately misrepresented the truth to Claimant, the courts and the general public, or others persons described above.

231. Claimant suffered injury and damages from each instance of fraud committed by the Defendants, both individually and cumulatively.

## EIGHTH CLAIM FOR RELIEF
## CONVERSION

232. Claimant incorporates by reference the allegations contained above as if fully set forth herein.

233. The Defendants, by and through the conduct described above, committed conversion in each instance in which they obtained funds from sale of Claimant's non-commercial property by creating a deed to Claimant's property for their own benefit and use when they had no ownership in the property.

234. Had Claimant owed a valid property tax, i.e., if Claimant was a bank, banker or corporation, the court could have obtained a judgment against the Claimant and/or his property.

235. However, to take possession and ownership of a property for an alleged debt is an Eight Amendment violation, and a RICO act.

## NINTH CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

236.. Claimant incorporates by reference the allegations contained above as if fully set forth herein.

237.. The Defendants intended, by the unlawful actions described above, to inflict severe emotional distress upon Claimant.

238.   Anyone who has ever been made homeless knows that Claimant has been seriously and substantially injured by these actions and has suffered damages as a result.

## **REQUEST FOR RELIEF**

Wherefore, Claimant requests judgment against the Defendants, as follows:

1. That the Defendants be held liable for all damages, in the liquidated amount of $10 million or a more substantive amount proved at trial, suffered by Claimant resulting from the acts alleged herein;

3. For an award of treble damages pursuant to the First Cause of Action, as, provided by statute;

4. For an award of punitive damages to be determined at trial against each of the Defendants;

5. For an award of Claimants costs and reasonable attorneys' fees;

6. For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Claimant, Dennis Rizer, demands trial by jury of all matters so triable as a matter of Right pursuant to Rule 38 of the Federal Rules of Civil Procedure.

By

Rizer, Dennis Rylan
Attorney-in-fact
c/o 6715 Skynook Drive
Austin, Texas 78745
(512) 693-1421

# GLOSSARY OF TERMS

**Ad Valorem tax:** According to value. A tax imposed on the value of property. The more common ad valorem tax is that imposed by states, counties, and cities on real estate. Ad valorem taxes, can, however, be imposed upon personal property; e.g. a motor vehicle tax may be imposed upon the value of an automobile and is therefore deductible as a tax. A tax levied on property or an article of commerce in proportion to its value, as determined by assessment or appraisal. *Callaway v. City of Overland Park*, 211 Kan. 646, 508 P.2d 902,907.

Duties are either ad valorem or specific,; the former when the duty is laid in the form of a percentage on the value of the property; the latter where it is imposed as a fixed sum on each article of a class without regard to its value.

**Business Situs:** A situs acquired for tax purposes by one who has carried on a business in the state more or less permanent in its nature. A situs arising when notes, mortgages, tax sale certificates and the like are brought into the state for something more than a temporary purpose, and are devoted to some business use there and thus become incorporated with the property of the state for revenue purposes. A situs arising where possession and control of property right has been localized in some independent business or investment away from owner's domicile so that its substantial use and value primarily attach to and become an asset of the outside business. *State v. Atlantic Oil Producing Co*, 174 Okl. 61, 49 P.2d 534, 538.

**Convert:** *See Conversion.* Black's Law Dictionary 6th Edition.

**Conversion :** the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444,(Tex. 1971)

The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law, a conversion. It is unnecessary to a conversion that there be a manual taking of the property. *First State Bank Morton v. Chesshir*, 634 S.W.2d 742, 745, (Tex.App.—Amarillo 1982, writ ref'd n.r.e.)

**Counterfeit security** A document which purports to be from a lawful authority, such as a State or a political subdivision thereof, that includes "evidence of indebtedness" with intent to deceive another person into believing they owe a debt, when in fact, they do not.

**In this State**.  "In this state" means within the exterior limits of Texas and includes all territory within these limits ceded to or owned by the United States. Texas Tax Code §151.004.

**Judicial sale**  Sale conducted under a judgment, order, or supervision of a court as in a sale under a petition for partition of real estate or an execution or a foreclosure sale.  One which must be based upon an order or a decree of a court directing the sale. *Petition of Acchione*, 425 Pa. 23, 227 A.2d 816, 821, 823.  Black's Law Dictionary 6th Edition.

**Jurisdiction** A term of comprehensive import embracing every kind of judicial action.  Federal Land Bank of Louisville Ky. V. Crombie, 258 Ky. 382, 80 S.W.2d 39, 40. I is the power of the court o decide a matter in controversy and presupposes the existence of a duly constituted court with control over the subject matter and the parties.  Pinner v. Pinner, 33 N.C.App. 204, 234 S.E.2d 633.  Black's Law Dictionary 6th Edition.

**Legal subdivision**.  Division of land which results from application of ordinary methods used in making of a governmental survey.  Black's Law Dictionary 6th Edition.

**Person** In general usage, a human being (i.e. natural person), though by statute term may include labor organizations, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers.  Black's Law Dictionary 6th Edition.

**Political subdivision**.  A division of the state made by proper authorities thereof, setting within their constitutional powers, for purpose of carrying out a portion of those functions of state which by long usage and inherent necessities of government have always been regarded as public. *State ex rel. Maisano v. Mitchell*, 156 Conn. 256,, 231 A.2d 539. 542.  Black's Law Dictionary 6th Edition.

**Private property**  As protected from being taken for public uses, is such property as belongs absolutely to an individual, and of which he has the exclusive right of disposition.  Property of a specific, fixed and tangible nature, capable of being in possession and transmitted to another, such as houses, lands, and chattels. Scranton v. Wheeler, 179 U.S. 141, 21 S.Ct. 48, 45 L.Ed. 126.  Black's Law Dictionary 6th Edition.

**Property** means any matter or thing capable of private ownership. Texas Tax Code definitions.

**Real Property**:   Land, and generally whatever is erected or growing upon or affixed to land.  Also rights issuing out of, annexed to, and exercisable within or about land.  A general term for lands, tenements, and hereditaments; property which, on the death of the owner intestate, passes to his heir.  Black's Law Dictionary 6th Edition.

**Real or immovable property consists of**:  Land; that which is affixed to land; that which is incidental or appurtenant to land; that which is immovable by law; except that for the purposes of sale, emblements, industrial growing crops and things attached to or forming part of the land, which are agreed to be severed before sale or under the contract of sale, shall be treated as goods and be governed by the regulating of the sales of goods.  Black's Law Dictionary 6th Edition.

**Rendition** generally:  (a) Except as provided by Chapter 24, a person shall render for taxation all tangible personal property used for the production of income that the person owns or that the person manages and controls as a fiduciary on January 1.   A rendition statement shall contain:  (4) the physical location or taxable situs of the property.  Texas Tax Code Sec. 22.01

**Sheriff's Deed** A document giving ownership right in property to a buyer at a sheriff's sale (i.e. a sale held by a sheriff to pay a court judgment against the owner of the property).  Deed given at sheriff's sale in foreclosure of a mortgage.  The giving of said deed begins a statutory redemption period.  Black's Law Dictionary 6th Edition

**Sheriff's Sale.**  A sale, commonly by auction, conducted by a sheriff or other court officer to carry out a decree of execution or foreclosure issued by a court. Examples include sales pursuant to attachments, liens and mortgage defaults. See Judicial sale. Black's Law Dictionary 6th Edition.

**Situs**.   Situation; location; e.g. location or place of crime or business.   Site; position; the place where a thing is considered, for example with reference to jurisdiction over it, or the right or power to tax it.  It imports fixedness of location. Situs of property, for tax purposes, is determined by whether the taxing state has sufficient contact with the personal property sought to be taxed to justify in

fairness the particular tax. *Town of Cady v. Alexander Const. Co.*, 12 Wis.2d 236, 197 N.W.2d 267, 270.

Generally, personal property has its taxable "situs": in that state where owner of it is domiciled. *Smith v. Lummus*, 149 Fla. 660, 6 So.2d 625, 627, 628. Situs of a trust means place of performance of active duties of trustee. *Campbell v. Albers*, 313 Ill.App. 152, 39, N.E.2d 672, 676. Black's Law Dictionary, 6th Edition.

**State** means a state of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States. Texas Tax Code Title 2, State Taxation, Art. II. Definitions

**State** means a State of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States. Texas Business and Commerce Code Sec. 1.201 GENERAL DEFINITIONS (b)(38).

**State,** when referring to a part of the United States, includes any state, district, commonwealth, territory, and insular possession of the United States and any area subject to the legislative authority of the United States. Sec. 311.005 Texas Code Construction Act, Government Code.

**Taxpayer** Taxpayer means a person liable for a tax, fee, assessment, or other amount imposed by a statute or under the authority of a statutory function administered by the comptroller. Texas Tax Code Chapter 101.003 Definitions

**Taxpayer** means any corporation, partnership, firm, association, governmental unit or agency or person acting as a business entity in more than one state. Texas Tax Code Chapter 141. Multistate Tax Compact 141.001 Art. II, (3).

**Uttering a forged instrument** The crime of passing a false or worthless instrument, such as a check or counterfeit security, with the intent to defraud or injure the recipient. Black's Law Dictionary 6th Edition.

**Declaration of Independence**

¶ 2    We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.

¶ 3    That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed.


**Texas Constitution**

**Art. 8, Sec. 1** (a) Taxation shall be equal and uniform.
(b) All <u>real property</u> and <u>tangible personal property</u> <u>in this State</u>, unless exempt as required or permitted by this Constitution, whether owned by natural personas or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law.
(d) The Legislature by general law shall exempt from ad valorem taxation household goods not held or used for the production of income and personal effects not held or used for the production of income. The Legislature by general law may exempt from ad valorem taxation:
        (1)    all or part of the personal property homestead of a family or single adult, "personal property homestead" meaning that personal property exempt by law from forced sale for debt;
        (2)    subject to Subsections (e) and (g) of this section, all other tangible personal property, except structures which are personal property and are used or occupied as residential dwellings and except property held or used for the production of income;
(e) The governing body of a political subdivision may provide for the taxation of all property exempt under a law adopted under Subdivision (2) or (3) of Subsection (d) of this section and not exempt from ad valorem taxation by any other law.

**Art. 11, Sec. 1 COUNTIES AS LEGAL SUBDIVISIONS.** The several counties of this State are hereby recognized as legal subdivisions of the State.